**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

MAUSEAN Q.V. CARTER,

    Plaintiff,

    v.

CAPT. TODD ALEXANDER ET AL.[1]

    Defendants.

Civil Action No.:  BAH-26-2361

**MEMORANDUM**

The above-captioned civil rights complaint was received for filing on June 11, 2026, together with motions to proceed in forma pauperis and for a preliminary injunction.  ECFs 2 and 3.  For the reasons stated herein, most of the claims are subject to dismissal for failure to state a claim.  Carter will be permitted to file an amended complaint as to the single claim that states a colorable Eighth Amendment claim, the remainder of the claims will be dismissed.

Plaintiff MauSean Q.V. Carter is incarcerated at Jessup Correctional Institution ("JCI").  The complaint he has filed concerns several disparate, unrelated claims regarding incidents that have occurred during the latter half of 2024 and the early part of 2025.  The complaint is 30 pages long, most of which are typed single-spaced.  Carter's claims are as follows:

Defendants Logan and Camara contaminated his medications when they "intentionally failed to use the degree of care that would be used by another reasonable health care professional

---

[1] Plaintiff names a total of 19 defendants including Captain Alexander.  They are: Christiana Logan, Jane Camara, Sgt. Washington, C.O. II Kivyatu, C.O.II Ogdodo, Sgt. A, Tony Enongene, Maryland Correctional Enterprises, Mat Hall, Major Enoboyim, C.O. II Wells, Sgt. Garnet, Jane Does, John Does, John AO Doe, Captain Dorsey, Ibrahima Keita, Centurion, LLC, and The Corporation Trust, Inc.  ECF 1, at 3–6.

when issuing [Carter his] meds on several occasions." ECF 1, at 9 ¶ 2.  He states that on July 24, 2024, Camara had no gloves on when she "deliberately started to dig into her nose & touch [his] meds & medication cups."  *Id.* ¶ 3.  He claims this resulted in him contracting a stomach virus, cold, and "other sicknesses."  *Id.* ¶ 5.  He also claims that Logan falsely accused him of banging on the pharmacy door and then violated HIPAA laws when she opened the pharmacy door and disclosed to everyone present that he has a mental health diagnosis.  *Id.* at 11 ¶ 15.  He explains that Logan called him "crazy" and "psycho" and told him he "need[ed] to take [his] psych meds" in front of other inmates.  *Id*. at 11–12 ¶ 16.  When Carter reported this to a lieutenant, he alleges that Ogbodo lied and said that Carter cursed Logan out.  *Id*. at 12 ¶¶ 17, 18.

The claims alleged against Camara and Logan sound in negligence and do not amount to an Eighth Amendment violation.  Carter does not allege he was suffering from an objectively serious medical need to which Camara and Logan were deliberately indifferent.  *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  Rather he alleges that he witnessed an unsanitary practice during the distribution of medication, but he does not describe what risk was created by the conduct such that the actions taken would be deemed unreasonable.  *See Cox v. Quinn*, 828 F.3d 227, 236 (4th Cir. 2016) ("[A] prison official's response to a known threat to inmate safety must be reasonable.").  Further, even assuming there was a violation of HIPAA, such violation does not create a right of a private cause of action.  *See Payne v. Taslimi*, 998 F.3d 648, 660 (4th Cir. 2021) (holding that HIPAA does not expressly allow for a private cause of action and declining to judicially create one, as doing so is generally disfavored).  This claim will therefore be dismissed.

He next claims that during the week of July 22, 2024, there were sewage floods on the bottom tier of JCI DD.  ECF 1, at 9–10 ¶ 6.  He states that within one hour the maintenance workers had water shut off until the problem could be fixed, but from July 24 through August 3, 2024, "foul

smelling water" kept coming out from the bottom of his toilet. *Id.* at 10 ¶ 7. Although he repeatedly notified tier officers Nzogan, John Doe, and Sgt. A, no action was taken until he filed an administrative remedy procedure complaint ("ARP"). *Id.* ¶ 8. The ARP coordinator Corporal Harvin requested copies of receipts for damaged property which Carter provided. *Id.* Carter told Harvin that Defendant Washington had refused to fix the leak despite being in the building several times. *Id.* ¶ 9. Carter later discovered the leak came from the cell above his and that Washington never opened a closet door to discover the cause despite being in the vicinity several times. *Id.* at 10–11 ¶ 10. The leak lasted 45 days. *Id.* at 10 ¶ 9.

Here, Carter admits that remediation of the problem occurred on the same day the problem started. To the extent that Defendant Washington did not fix the leak because he did not know where it was coming from, this claim sounds in negligence, and negligence is not a proper basis for a constitutional claim. Conditions of confinement must meet the subjective component of an Eighth Amendment claim, meaning "the official kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Porter v. Clarke*, 923 F.3d 348, 361 (4th Cir. 2019) (alterations in original) (quoting *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016)). "Deliberate indifference is 'more than mere negligence,' but 'less than acts or omissions [done] for the very purpose of causing harm or with knowledge that harm will result.'" *Scinto*, 841 F.3d at 225 (quoting *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)). As such, this claim will also be dismissed.

On September 15, 2024, Carter claims that the control panel officer Kivyatu closed the cell door on his neck and shoulder area because he was upset due to Carter reporting him to the Sergeant after Kivyatu failed to "deadlock" Carter's cell when asked to do so. ECF 1, at 11 ¶ 11. Carter states he returned to his cell from a pass at approximately 10:20 a.m., and the tier officer behind him called for Kivyatu to open the cell door which he did but only halfway. *Id.* Before

entering the cell, Carter bent down to pick something up and Kivyatu closed the door on his neck and shoulder area even though the relief tier officer never called for the door to be closed. *Id.* ¶¶ 12, 13. Carter claims that Kivyatu was observing him the entire time and that he sustained a fracture to his left shoulder, a neck injury, and permanent nerve damage as a result of the incident. *Id.* ¶ 13. Assuming the allegations raised by Carter regarding Officer Kivyatu's actions are true, this claim raises a colorable claim and will be permitted to proceed. He will, however, be required to file an amended complaint with **only** this claim stated in the amended complaint.

He also claims that he was not permitted to go to daily medical appointment passes on several occasions between September 19, 2024 and April 29, 2025, and was instead forced to go to medical via wheelchair for emergency medical treatment by Sgt. A. *Id.* at 12 ¶¶ 19, 20. For the reasons stated above, this also does not state an Eighth Amendment claim regarding medical care and must be dismissed.

Carter states that he was not given job promotions he was qualified to receive due to discriminatory reasons based on his creed. *Id.* at 12 ¶ 21, at 13 ¶ 26. Prisoners are generally not entitled to participate in a particular prison programs or to hold a particular prison job. *See Erisman v. Campbell*, Civ. No. DKC-17-0054, 2018 WL 704850, at *7 (D. Md. Feb. 5, 2018). "[G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution." *Meachum v. Fano*, 427 U.S. 215, 224 (1976); s*ee also Sandin v. Conner*, 515 U.S. 472, 493 (1995) (requiring an atypical and significant hardship as prerequisite to creation of a constitutionally protected liberty interest). Carter's claim that he has been excluded from full participation in a prison program for discriminatory reasons is conclusory. *See* ECF 1, at 13–14 ¶ 26 (alleging that "MCE plant

managers are not giving [Carter] an official explanation as to why [he is] particularly denied the opportunity to work for Defendant MCE unlike other [applicants] similarly situated"). He provides no facts upon which a reasonable person might conclude that he has been the victim of discrimination. Thus, to the extent that he claims he has been excluded on a discriminatory basis, this claim is dismissed without prejudice. Should he be able to provide sufficient detail through amendment, Carter may raise it in a **separate** lawsuit as it is unrelated to the sole claim that will move forward in this case.

Carter also claims that Tony Enongene and John Does retaliated against him on May 2, 2025, for filing ARPs and a civil suit against Enongene, that they used witness intimidation tactics to make him withdraw his federal lawsuit, and that they made subtle threats to convince him to withdraw his lawsuit. *Id.* at 13 ¶ 22. After Carter refused to sign a paper withdrawing his complaint, he filed an ARP requesting that Enongene not be allowed to work at posts near him. *Id.* Carter claims that Enongene then falsely charged him with escape and the charges were later dismissed. *Id.* ¶ 24, at 15 ¶ 36.

To state a claim of retaliation for exercising First Amendment rights, a plaintiff must show that (1) the plaintiff engaged in protected First Amendment activity; (2) the defendant took some action that adversely affected the First Amendment rights; and (3) there was a causal relationship between the protected activity and the defendant's conduct. *See Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005). Carter does not provide a causal link between the escape charge and the filing of his ARPs. He does not describe the circumstances of the escape charge such that one might conclude that the charge was blatantly false and leveled for the sole purpose of retaliation. This claim will also be dismissed without prejudice. To the extent

he can state a viable claim with additional allegations, Carter may raise it in a **separate** lawsuit as it is unrelated to the sole claim that will move forward in this case.

Carter's motion for preliminary injunctive relief will be denied without prejudice pending receipt of his amended complaint. "A preliminary injunction is an extraordinary remedy intended to protect the status quo and prevent irreparable harm during the pendency of a lawsuit." *Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017) (citations omitted). To obtain a preliminary injunction, a plaintiff must establish four factors: (1) that he is likely to succeed on the merits; (2) that he is likely to suffer irreparable harm if preliminary relief is not granted; (3) that the balance of equities favors him; and (4) that an injunction is in the public interest. *See Frazier v. Prince George's Cnty.*, 86 F.4th 537, 543 (4th Cir. 2023) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). The movant "must establish all four elements in order to prevail." *Profiles, Inc. v. Bank of America Corp.*, 453 F. Supp. 3d 742, 746 (D. Md. 2020) (citing *Pashby v. Delia*, 709 F.3d 307, 320–21 (4th Cir. 2013)).

"To find a likelihood of success on the merits, this Court would have to conclude that Plaintiff[] [is] likely to succeed on the merits of a particular count in the" complaint. *Am. Fed'n of Tchrs. v. Dep't of Educ.*, 779 F. Supp. 3d 584, 604–05 (D. Md. 2025) (citing *Profiles, Inc. v. Bank of Am. Corp.*, 453 F. Supp. 3d 742, 747 (D. Md. 2020)). "This Court 'does not have the authority to issue an injunction based on claims not pled in the complaint.'" *Id.* (citing *LA Alliance for Hum. Rts. v. Cnty. of Los Angeles*, 14 F.4th 947, 957 (9th Cir. 2021)); *see also Omega World Travel, Inc. v. Trans World Airlines*, 111 F.3d 14, 16 (4th Cir. 1997) ("The purpose of interim equitable relief is to protect the movant, during the pendency of the action, from being harmed or further harmed in the manner in which the movant contends it was or will be harmed *through the illegality alleged in the complaint.*" (emphasis added)).

In his motion for a preliminary injunction, Carter seeks specific medical treatment, at least in part related to the injuries he alleges he suffered on September 15, 2024, by Officer Kivyatu. However, the motion is, at least in part, premised on factual allegations that differ from those alleged in the complaint. As such, Carter has not established likelihood of success on the merits of a claim pled in the complaint, and the motion must be denied. *See Omega World Travel*, 111 F.3d at 16 (citing *Devose v. Herrington,* 42 F.3d 470, 471 (8th Cir. 1994)). Should Carter wish to file a renewed motion for preliminary injunction, he should ensure that the basis for the motion and relief sought are adequately tied to the allegations and relief sought in the complaint.

Carter is reminded that his amended complaint, which must include **only** the claim regarding the incident he alleges Officer Kivyatu shut Carter's neck and shoulder in the cell door on September 15, 2024, must also include (1) the names of any other defendants involved in the initial injury and a description of how they were involved; (2) if his injuries have required treatment he has not received, a brief description of that treatment, who prescribed it and when; and (3) a request for relief. Carter is also directed to limit his amended complaint to 20 double-spaced typewritten pages. He is forewarned that failure to follow the directives of the Court may result in dismissal of the remaining claim without further notice and without prejudice.

A separate order follows.

July 14, 2026                                             _____/s/_____
Date                                                     Brendan A. Hurson
                                                         United States District Judge

7